371 So.2d 810 (1979)
Leopoldo C. MARQUEZ, Individually and as father and guardian of and for the use and benefit of his minor child, James A. Marquez
v.
CITY STORES COMPANY (owners of Maison Blanche Stores), Travelers Insurance Company, Otis Elevator Company and Commercial Union Insurance Companies.
No. 63659.
Supreme Court of Louisiana.
May 21, 1979.
*811 Ralph E. Orpys, Metairie, James David McNeill, New Orleans, for plaintiff-applicant.
Donald O. Collins, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendants-respondents.
DIXON, Justice.
Plaintiff sued the department store, and others, for injuries sustained by his three and one-half year old son when the child's tennis shoe got caught in a descending escalator, resulting in subsequent surgical amputation of the big toe of the left foot. The district court found for the father and against the store owner and its insurer but dismissed the main demand by the father as well as the third party demand of the store owner and its insurer against the escalator installer and its insurer. On appeal by the store owner, the Court of Appeal reversed the trial court finding that the store owner and its insurer were not liable under either a tort or a strict liability theory and that the judgment dismissing the escalator installer and its insurer was final. We granted writs.
On February 21, 1976 plaintiff, his wife and two minor children were on the escalator at Maison Blanche department store in Lake Forest Plaza in New Orleans descending from the second to the first floor. *812 Plaintiff was standing on the same step as his three and one-half year old child. He had his hand lightly on his son's shoulder while the child had his hand on the handrail. Although the father could not explain how the accident happened, he testified that the child was not misbehaving and that they were simply standing on the escalator when his son's left foot was caught in the side of the escalator between the moving stair tread and the adjacent side panel of the escalator. The child was wearing relatively new and not excessively worn tennis shoes; the left shoe was cut along the front side in the area of the big toe. Another passenger on the escalator drove the family to the hospital where the doctor surgically amputated half of the child's left big toe. Medical testimony from the treating orthopedic surgeon indicates that the child has a 10% permanent loss of his foot, that he will forever have trouble pushing off or jumping, and that his gait is affected.
The father, Leopoldo C. Marquez, individually and as guardian of his minor child, James, sued City Stores Company, the owner of Maison Blanche, its insurer, Travelers Insurance Company, Otis Elevator Company, which had constructed the elevator and was under contract with Maison Blanche to maintain it, and its insurer, Commercial Union Insurance Companies. All defendants answered and denied negligence and, in the alternative, asserted negligence of the father in failing to supervise properly his son. City Stores and Travelers also filed a third party demand against Otis and Commercial, alleging that if the store owner was found negligent, the proximate cause of the accident was the negligence of Otis in failing to maintain properly the escalator equipment, and seeking indemnification or contribution from Otis and Commercial.
The trial court held that there was no contributory negligence, and that City Stores was liable to plaintiff. The third party demand against Otis was dismissed because the trial court could find no negligence in Otis' performance and no indemnification provision in the maintenance contract sued on. Only City Stores appealed the trial court judgment; plaintiff and Otis answered the appeal. In reversing the trial court's finding on the factual issue of liability, the Court of Appeal found that this accident could not have been anticipated by City Stores even with the exercise of all human care, vigilance and foresight reasonably suggested under the circumstances; that the plaintiff failed to prove a defect or vice in the escalator through which the damage occurred, as one of the elements of strict liability under Loescher v. Parr, 324 So.2d 441 (La.1975); and that the dismissal of Otis and its insurer was a final judgment because plaintiff only answered City Stores' appeal without taking his own appeal.
As the intermediate court correctly stated, the issue in this case is whether City Stores is strictly liable under C.C. 2317, which provides:
"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications."
In Loescher v. Parr, supra, this court interpreted this article to provide a basis of strict liability for the owner of a defective thing independent of the "modifications" in the following Civil Code articles 2318-24, but consistent with the scheme of delictual responsibility represented by these companion articles.[1] We held that C.C. 2317 embodies *813 the concept of legal fault without personal negligence of the guardian of a thing for the damage caused by the defect of his thing.
In Loescher v. Parr, supra, this court found that the owner was strictly liable when a rotten tree fell across a neighbor's car, causing damage. This court reasoned that the plaintiff had proved (a) that the thing which caused the damage was in the care (custody) of the owner, (b) the defect or vice of the tree, and (c) that his damage occurred through this defect or vice. Therefore, we held that the owner of the defective thing was liable for his legal fault in maintaining the defective tree and in not preventing its vice from causing injury.
C.C. 2317 and Loescher v. Parr, supra, have been applied to hold a department store owner strictly liable for injuries a plaintiff sustained on a defective escalator in its store. Wolverton v. City Stores Co. (Maison Blanche division), 363 So.2d 1321 (La.App.1978).
In the instant case, however, it is not argued that the escalator which caused the damage was not in the custody of the store owner nor that the damage did not occur through the escalator. But the Court of Appeal did find that the plaintiff did not prove a defect or vice in the escalator. The court noted that the national standards for safe escalator construction provide that a necessary side opening between the moving stair tread and the stationary adjacent panel may not exceed three eighths of an inch, and in this case the opening was not more than three sixteenths of an inch. Also noting that there was no evidence in the record that such an accident had ever happened before, the court viewed this accident as a freak accident, citing Cannon v. Holmes, 274 So.2d 799 (La.App.1973), writ denied 277 So.2d 677 (La.1973) and Norberg v. Sears Roebuck & Co., 321 So.2d 795 (La. App.1975). The Court of Appeal also rejected plaintiff's testimony that the escalator shook like an earthquake and that there was a flash of light from under the stairs, after reviewing Otis' testimony that it was impossible for this to happen.
However, the plaintiff's testimonial to these unusual occurrences has nothing to do with this court's finding of a vice or defect in the escalator. The record indicates that the plaintiff and his son were properly using the equipment for the purpose and in the manner intended; there was no finding of contributory negligence. Presumably, several hundred thousand people have used this same escalator since it was installed in 1972 without a foot becoming wedged in the side opening. The fact that this escalator caught this child's shoe is an unusual occurrence in itself which would not have happened had this escalator not been defective. Ott v. J. C. Penney Co., 360 So.2d 524 (La.App.1978); Tarantino v. City Stores Co. (Maison Blanche division), 278 So.2d 149 (La.App.1973), writ denied 281 So.2d 741 (La.1973).
Further, the testimony of the maintenance supervisor for Otis, Roger Harris, that the opening in this case was not more than three sixteenths of an inch and that the national standards for safe escalator construction allow three eighths of an inch is insufficient to rebut the inference that there was a vice or defect in this escalator *814 which caused an unreasonable risk of harm to another. If this escalator were safe for small children with small feet, then James' shoe could not have been caught in this opening.
Nor is this accident a freak accident. Otis' own evidence shows that a part of a tennis shoe got caught in the same opening seven months after this accident. Further, in Mire v. Otis Elevator Co., 357 So.2d 1326 (La.App.1978) an almost identical accident occurred on an Otis escalator in D. H. Holmes in Lakeside Shopping Center in New Orleans. In Mire the minor child was descending from the second to the first floor on the same step with her mother when the child's tennis shoe was caught in the opening between the moving step and the adjacent side panel, and subsequently two thirds of her fifth toe had to be surgically amputated. The department store and Otis raised the same defenses as in the instant case, denying negligence and alleging contributory negligence of the parent in failing to supervise properly the minor child. The same maintenance supervisor for Otis, Roger Harris, testified in Mire that the opening between the escalator tread and the adjacent skirt was not more than three sixteenths of an inch, and the national standards permitted three eights of an inch; however, the jury found the escalator defective and specifically found the mother not contributorily negligent.[2] The Court of Appeal found that the jury did not abuse its discretion.
Although the similarity of facts between Mire, supra, and the instant case does not prove that the escalator in the instant case was defective, it does demonstrate that this accident is not a freak accident. We find that the escalator which caused damage was in the custody of City Stores; that the escalator was defective; and that the injury occurred through this defect. Therefore, we hold City Stores liable for maintaining a defective escalator and in not preventing its vice from causing injury.
In brief respondent, City Stores, and its insurer, seek in the event this court reinstates the trial court judgment, that we find in favor of the respondent on its third party demand for indemnification against Otis and its insurer. City Stores alleged in its third party demand that Otis was the tort feasor whose gross and wanton negligence in failing to maintain properly the escalator equipment was the proximate cause of the injury, and filed into evidence its maintenance contract with Otis. Finding no negligence in performance of the contract and no requirement of indemnification in the contract, the trial court dismissed the third party demand. We find no evidence in the record of negligent performance or of an indemnification provision, and (in the absence of a contrary argument in brief to this court specifying how the trial court erred, how Otis violated its contract or how Otis warranted the safety of its escalators) we find that City Stores has failed to prove its third party claim; we affirm the trial court's dismissal of it.[3]
*815 For these reasons, we reverse the Court of Appeal and reinstate the judgment of the trial court in favor of plaintiff, Leopoldo C. Marquez, individually, for $558.32, and in favor of Leopoldo C. Marquez as father and guardian of the minor child, James A. Marquez, for $7500.00, and against City Stores Company (Maison Blanche) and Travelers Insurance Company, in solido. We affirm the dismissal of the third party demand against Otis Elevator Company, and tax all costs to City Stores Company and its insurer.
MARCUS, J., dissents.
NOTES
[1] This court summarized in Loescher v. Parr, supra, the principle of legal fault in these companion articles, C.C. 2318, 2320, 2321 and 2322, as follows:

"When harm results from the conduct or defect of a person or thing which creates an unreasonable risk of harm to others, a person legally responsible under these code articles for the supervision, care, or guardianship of the person or thing may be held liable for the damage thus caused, despite the fact that no personal negligent act or inattention on the former's part is proved. The liability arises from his legal relationship to the person or thing whose conduct or defect creates an unreasonable risk of injuries to others.
The fault of the person thus liable is based upon his failure to prevent the person or thing for whom he is responsible from causing such unreasonable risk of injury to others. Thus, the person to whom society allots the supervision, care, or guardianship (custody) of the risk-creating person or thing bears the loss resulting from creation of the risk, rather than some innocent third person harmed as a consequence of his failure to prevent the risk. His fault rests upon his failure to prevent the risk-creating harm and upon his obligation to guard against the condition or activity (by the person or thing for which he is responsible) which creates the unreasonable risk of harm to others.
This jurisprudence recognizes that the injured person must prove the vice (i.e., unreasonable risk of injury to another) in the person or thing whose act causes the damage, and that the damage resulted from this vice. Once this is proved, the owner or guardian responsible for the person or thing can escape liability only if he shows the harm was caused by the fault of the victim, by the fault of a third person, or by an irresistible force.
The legal fault thus arising from our code provisions has sometimes been referred to as strict liability." 324 So.2d at 446-447.
[2] In Mire the primary conflict in the evidence centered around the width between the side of the step tread and the adjacent skirt. Mr. Harris testified that when he inspected the escalator after the accident the clearance varied from one eighth to three sixteenths of an inch and the national standards allow three eights of an inch. Apparently, the jury believed the plaintiff, a civil engineer, who on the day of the injury measured the side opening and found it varied from one eighth to three fourths of an inch at different points.
[3] The intermediate court reasoned that if any defendant was liable it should have been Otis, the constructor and installer of the escalator, because there were no safety switches along the side panel to stop the escalator when an object is caught, no guards or strips to protect a soft rubber object from getting caught and no signs to warn passengers against tennis shoes along with bare feet on the escalator. However, as the trial court noted, the maintenance contract between Otis and Maison Blanche provides:

"We shall not be required to make other safety examinations nor to install new attachments on the escalators whether or not recommended or directed by insurance companies or by governmental authorities, nor to make any replacements with parts of a different design. It is agreed that we are not required to make renewals or repairs necessitated by reason of negligence or misuse of the equipment or by reason of any other cause beyond our control except ordinary wear and tear."